Lauren N. Wright, #27616
Christopher A. McElgunn, #13359
Michelle L. Brenwald, #19287
1600 Epic Center - 301 North Main
Wichita, Kansas  67202-4816
TEL:  (316) 267-0331
FAX: (316) 267-0333
lwright@klendalaw.com
cmcelgunn@klendalaw.com
mbrenwald@klendalaw.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

DALTON R. BLEDSOE, BY AND THROUGH )
HIS DULY APPOINTED GUARDIANS, LINDA )
BLEDSOE AND CLAYTON BLEDSOE. )
                               )
                Plaintiffs, )
vs. )
                               )     Case No.
KANSAS DEPARTMENT OF AGING AND )
DISABILITY SERVICES; )
LARNED STATE HOSPITAL; )
TIM KECK, in his personal and professional )
capacity as former secretary of Kansas )
Department of Aging and Disability Services; )
LAURA HOWARD, in her personal professional )
capacity as Secretary of Kansas Department of )
Aging and Disability Services; )
BILL REINS, in his personal and professional )
capacity as Larned State Hospital superintendent; )
LESIA DIPMAN, in her personal and )
professional capacity as Administrative Program )
Director of the State Security Program at Larned )
State Hospital; )
ROBIN L. KARP, in his personal and )
professional capacity as a Psy. D. at Larned State )
Hospital; )
KIMBERLY EASTIN, in her personal and )
professional capacity as a Mental Health )
Developmental Disability Technician at Larned )
State Hospital; )
SIERRA HERNANDEZ, in her personal and )
professional capacity as a Mental Health )
                               )

Developmental Disability Technician at Larned )
State Hospital; )
ANDREA CLARK, in her personal and )
professional capacity as a MHDD at Larned State )
Hospital; )
KENNA URBAN, in her personal and )
professional capacity as a MHDD at Larned State )
Hospital; )
JOHN DOE and JANE DOE. )
                                                              )
                         Defendants.

## COMPLAINT

COMES NOW, Plaintiff, by and through his counsel of record, Klenda Austerman LLC, and brings this action against the Defendants named herein for damages, costs of suit, and injunctive and declaratory and other suitable relief under the laws of the United States of America, including 42 USC §1983, and the laws of the State of Kansas, and alleges and states as follows:

## NATURE OF ACTION

1.      This is an action for damages sustained by Plaintiff, Dalton R. Bledsoe ("Bledsoe"), a Citizen of the United States, as a result of the violation of his federal civil rights by person acting under color of state law, brought pursuant to 42 U.S. §1983, of which this court has original jurisdiction; and, for damages sustained by Dalton Bledsoe as a result of the negligent acts and omissions of the same persons, employed by the State of Kansas and acting in the course and scope of their employment with Larned State Hospital ("LSH") which the Kansas Department of Aging and Disability Services ("KDADS") is responsible for the administration of, for which LSH and KDADS are vicariously liable pursuant to the Kansas Tort Claims Act ("KTCA"), K.S.A. 75-601 *et seq.,* of which this court has supplementary and pendant jurisdiction as such claims arise out of the same core of operative facts.

#27N7469

## I.     JURISDICTION & VENUE

2.     This action is brought pursuant to 42 U.S.C. § 1983, and the KTCA and the common law of the State of Kansas.

3.     This court has jurisdiction over Plaintiff's federal civil rights claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(a)(3).

4.     This court has jurisdiction over Plaintiff's KTCA and state common law claims pursuant to 28 U.S.C. § 1367(a).

5.     The amount in controversy exceeds $75,000, exclusive of costs and interest.

6.     Venue is properly established in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391(b).

## II.     PARTIES

7.     Plaintiff Dalton R. Bledsoe is a resident of Texas and may be served at 5525 Mansions Bluffs, Apt. 921, San Antonio, Texas 78245, and at the time of the events that form the basis of this lawsuit was a resident at the Larned State Hospital, 1301 KS Hwy 265, Larned, KS 67550.

8.     Plaintiff Bledsoe is, and at all times material, an incapacitated person as defined by K.S.A. 59-3051. On June 28, 2018, professionals at the Elizabeth Layton Center diagnosed Dalton has a moderate level of Intellectual Developmental Disorder Impairment, Pervasive Developmental Disorder and Attention Deficit Hyperactivity Disorder.

9.     Defendant Kansas Department of Aging and Disability Services is a State agency, and can be served with process through Sherry Diel, Chief Counsel, 503 S. Kansas Ave., Topeka, Kansas, 66603.

#27N7469

10.    Defendant Larned State Hospital (LSH), and can be served with process through Lesia Dipman, Superintendent, at 1301 KS Hwy 265, Larned, Kansas 67550. LSH is the largest psychiatric facility in the state serving the western two-thirds of Kansas. Among other things, LSH's mission is to provide a safety net of mental health services for Kansans in partnership with consumers, community providers and the justice system, and to deliver support services to related agencies.

11.    Defendant Timothy Keck ("Keck") is a resident of the State of Kansas, and at all times material was the Secretary of KDADS. Keck is sued in his individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in his individual and official capacity as an "employee" of KDADS, a "governmental" entity under the KTCA. At all times relevant, Keck was acting under color of state law. Keck may be served with process at 3417 NW Dawdy Dr., Topeka, Kansas 66618.

12.    Defendant Laura Howard ("Howard") is a resident of the State of Kansas, and at all times material was the Secretary of KDADS, Howard is sued in her individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in her individual and official capacity as an "employee" of KDADS, a "governmental" entity under the KTCA. At all times relevant, Howard was acting under color of state law. Howard may be served with process at Kansas Dept. for Aging & Disability Services, 503 S. Kansas Ave., Topeka, KS 66603.

13.    Defendant Bill Reins ("Reins") is currently a resident of the State of Wyoming, but at all times material was a resident of the State of Kansas serving as the Superintendent of the Larned State Hospital. Reins is sued in his individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in his individual and official capacity

4

as an "employee" of LSH, a "governmental" entity under the KTCA. At all times relevant, Reins was acting under color of state law. Reins may be served with process at 830 State Highway 150 S., Evanston, Wyoming 82930.

14.     Defendant Lesia Dipman ("Dipman") is a resident of the State of Kansas, and at all times material was the Administrative Program Director of the State Security Program at LSH. Dipman is sued in her individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in her individual and official capacity as an "employee" of LSH, a "governmental" entity under the KTCA. At all times relevant, Dipman was acting under color of state law. Dipman may be served with process at 624 W. 4th St., Larned, Kansas 67550.

15.     Defendant Robin L. Karp, Psy D LP ("Karp") is a resident of the State of Kansas, and at all times material was employed at LSH as a licensed Psychologist. Karp is sued in her individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in her individual and official capacity as an "employee" of LSH, a "governmental" entity under the KTCA. At all times relevant, Karp was acting under color of state law.

16.     Defendant Kimberly Eastin ("Eastin") is currently a resident of the State of Oklahoma but at all times material was a resident of Kansas employed at LSH as a Mental Health Developmental Disability Tech ("MHDD"). Eastin is sued in her individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in her individual and official capacity as an "employee" of LSH, a "governmental" entity under the KTCA. At all times relevant, Eastin was acting under color of state law. Eastin is may be served with process at 2900 Chautauqua Ave., #232, Norman, Oklahoma 73072.

17.     Defendant Sierra Hernandez ("Hernandez") is a resident of the State of Kansas and at all times material was employed at LSH as a MHDD. Hernandez is sued in her individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983,

#27N7469

and in her individual and official capacity as an "employee" of LSH, a "governmental" entity under the KTCA. At all times relevant, Hernandez was acting under color of state law. Hernandez may be served with process at 1901 Madison St., Great Bend, Kansas 67530.

18.     Defendant Andrea Clark ("Clark") is a resident of the State of Kansas and at all times material was employed at LSH as a MHDD. Clark is sued in her individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in her individual and official capacity as an "employee" of LSH, a "governmental" entity under the KTCA. At all times relevant, Clark was acting under color of state law. Clark may be served with process at 519 E. 7th St., Hoisington, Kansas 67544.

19.     Defendant Kenna Urban ("Urban") is a resident of the State of Kansas and at all times material was employed at LSH as a RN. Urban is sued in her individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in her individual and official capacity as an "employee" of LSH, a "governmental" entity under the KTCA. At all times relevant, Urban was acting under color of state law. Urban may be served with process at 2313 Cleveland St., Great Bend, Kansas 67530.

20.     Defendant John Doe is, and at times material has been an agent and employee of Defendant LSH and/or Defendant KDADS and John Doe is sued in his individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in his individual and official capacity as an "employee" of LSH, a "governmental" entity under the KTCA. At all times relevant, John Doe was acting under color of state law.

21.     Defendant Jane Doe is, and at all times material has been an agent and employee of Defendant LSH and/or Defendant KDADS and Jane Doe is sued in his individual capacity with respect to Bledsoe's federal civil rights claims brought pursuant to 42 U.S.C. §1983, and in his individual and official capacity as an "employee" of LSH, a "governmental" entity under the KTCA. At all times relevant, Jane Doe was acting under color of state law.

#27N7469

### III.     FACTUAL ALLEGATIONS

### DALTON BLEDSOE'S PLACEMENT AT LARNED STATE HOSPITAL

22.     On August 17, 2018, as part of a juvenile case involving Dalton Bledsoe, the District Court of Anderson County, Kansas determined Dalton was incompetent for further proceedings. The Court based its determination on a competency evaluation performed by the Elizabeth Layton Center, Dalton Bledsoe was incompetent for further proceedings.

23.     Based on this determination, the Court ordered Dalton be committed for evaluation and treatment pursuant to K.S.A. 38-2349. The Order states: "That pursuant to K.S.A 38-2349, the juvenile shall be committed for evaluation and treatment to *any appropriate public or private institution* for a period not to exceed 90-days." (emphasis added) A copy of the Order is attached as **Exhibit A.**

24.     The Order was provided to KDADS in order to place Dalton in an appropriate public or private institution. There are two public state controlled institutions in the State of Kansas, Larned State Hospital and Osawatomie State Hospital. There are also several private institutions that could have evaluated Dalton and treated him in compliance with the Order.  John Doe(s) and/or Jane Doe(s), employees of KDADS, placed Dalton at Larned State Hospital for evaluation and treatment.

25.     Prior to placement at LSH, Dalton was diagnosed with moderate level of Intellectual Developmental Disorder Impairment, Pervasive Developmental Disorder and Attention Deficit Hyperactivity Disorder. Plaintiff Dalton Bledsoe functioned at the mental capacity of a seven year old, he was verbal, could read at a 3rd grade level, continent, capable of handling hygiene needs, and not listed as a fall risk as it related to physical activity.

#27N7469

## DEFENDANTS' RESPONSIBILITIES

26.     At all times material, all Defendants had responsibilities for providing care and treatment to patients of LSH. Furthermore, Defendants had responsibilities for performing functions as employees of the LSH and KDADS, all related to Dalton Bledsoe's care and treatment.

27.     The Kansas Department for Aging and Disability Services (KDADS) is responsible for the administration of Larned State Hospital for Kansans suffering from mental illness

28.     There were management responsibilities for employees at LSH, including

a) the hiring, promoting, training, supervising, disciplining, and firing of employees, and/or

b) the management of patient care.

Some or all of the Defendants had management responsibilities in these regards.

29.     Defendant Keck, as the Secretary of KDADS during all times material, was responsible for Dalton Bledsoe's care, treatment, and protection, including ensuring Dalton was placed in the proper facility to accommodate his mental deficiencies and that the facility was properly staffed to provide Dalton Bledsoe with the appropriate care. Defendant Keck failed to take the steps necessary for the proper and appropriate care, treatment, and protection of Dalton Bledsoe.

30.     Defendant Reins, as the Superintendent of LSH during all times material was responsible for Dalton Bledsoe's care, treatment, and protection, including ensuring LSH was properly staffed and that all staff were properly trained. Defendant Reins failed to take the steps necessary for the proper and appropriate care, treatment, and protection of Dalton Bledsoe.

#27N7469

31.     Defendant Dipman, as the Administrative Program Director of the State Security Program at LSH during all times material, was responsible for Dalton Bledsoe's care, treatment, and protection, including ensuring that (a) policies were in place and department staff were properly trained to handle patients that posed a threat to staff and other patients, and (b) staff was trained to handle the care of patients with mental deficiencies such as Dalton Bledsoe. Defendant Dipman failed to take the necessary steps for the proper and appropriate care, treatment, and protection of Dalton Bledsoe.

32.     Defendant Karp, as the licensed psychiatrist at LSH during all times material was responsible for Dalton Bledsoe's care, treatment, and protection. Defendant Karp failed to take the steps necessary for the proper and appropriate care, treatment, and protection of Dalton Bledsoe.

33.     Defendant Urban, as the registered nurse on duty in Dalton Bledsoe's assigned unit on October 22, 2018, was responsible for Dalton Bledsoe's care, treatment, and protection. Defendant Urban failed to take the steps necessary for the proper and appropriate care, treatment, and protection of Dalton Bledsoe.

34.     Defendant Eastin, as a MHDD on duty in Dalton Bledsoe's assigned unit on October 22, 2018, was responsible for Dalton Bledsoe's care, treatment, and protection. Defendant Eastin failed to take the steps necessary for the proper and appropriate care, treatment, and protection of Dalton Bledsoe.

35.     Defendant Hernandez, as the MHDD on duty in Dalton Bledsoe's assigned unit on October 22, 2018, was responsible for Dalton Bledsoe's care, treatment, and protection. Defendant Hernandez failed to take the steps necessary for the proper and appropriate care, treatment, and protection of Dalton Bledsoe.

9

#27N7469

36.     Defendant Clark, as the MHDD on duty in Dalton Bledsoe's assigned unit on October 22, 2018, was responsible for Dalton Bledsoe's care, treatment, and protection. Defendant Clark failed to take the steps necessary for the proper and appropriate care, treatment, and protection of Dalton Bledsoe.

37.     John Doe(s) and/or Jane Doe(s), as employees of LSH was responsible for Dalton Bledsoe's care, treatment, and protection. Defendant John Doe(s) and/or Jane Doe(s) failed to take the steps necessary for the proper and appropriate care, treatment, and protection of Dalton Bledsoe.

38.     Laura Howard, as the current acting Secretary of KDADS, is sued in her official capacity only as the Secretary of KDADS with respect to the claims asserted against KDADS under the KTCA, by and through its past and present employees, for which KDADS is vicariously liable under the KCTA.

39.     The combination of Dalton Bledsoe's involuntary commitment and his total dependence on his custodians obliged Defendants to take thought and make reasonable provisions for his welfare.

40.     Commitment under government order or at the direction of state actors for any purpose constitutes a significant deprivation of liberty that requires due process protection. *Jones, supra,* 463 U.S., at 361, 103 S.CT., at 3048.

41.     As Dalton Bledsoe's custodian and caregivers, Defendants had the duty to provide for his safety and general wellbeing.

#27N7469

## FACTS RELEVANT TO ALL CLAIMS

42.    There was a 22% vacancy rate among mental health technicians at LSH during 2018. In 2018, LSH administrators mandated mental health technicians work up to 16-hour shifts to cover assignments left vacant due to one in five of the direct-care positions being unfilled.

43.    On October 22, 2018, and for a substantial period of time prior to October 22, 2018, Ruiz-Hernandez was a resident of LSH and was subject to its rules, regulations, supervision, management, control and directives.

44.    Resident Ruiz-Hernandez was ordered to LSH for evaluation and treatment related to two separate cases for aggravated assault on a law enforcement officer with a deadly weapon.

45.    On October 22, 2018, and for a substantial period of time prior to October 22, 2018, Barrientos was a resident of LSH and was subject to its rules, regulations, supervision, management, control, and directives.

46.    Dalton Bledsoe attended group competency restoration sessions as part of his evaluation and treatment at LSH.

47.    During a group competency restoration session on September 24, 2018, supervised by Defendant Karp, Dalton Bledsoe "repeatedly attempted to disclose information related to his charges and required redirection."

48.    Given the nature of Dalton Bledsoe's charges, LSH staff knew or should have known the threat posed to accused child molesters by fellow detainees in incarcerated settings. Defendants failed to take proper precautions to ensure Dalton Bledsoe's safety following the disclosure of the nature of his charges to other residents.

#27N7469

49.     Ruiz-Hernandez was housed on the same unit as Dalton Bledsoe. Ruiz-Hernandez attended the same group therapy sessions as Dalton Bledsoe and came to know the charges against Dalton Bledsoe.

50.     Barrientos was housed on the same unit as Dalton Bledsoe. Barrientos attended the same group therapy sessions as Dalton Bledsoe and came to know the charges against Dalton Bledsoe.

51.     On October 22, 2018, and for a substantial period of time prior to October 22, 2018, Defendants employed at KDADS and LSH had a clearly established duty under the United States Constitution to protect residents at LSH, including Dalton Bledsoe, from violence at the hands of other residents. It is deliberate indifference to a substantial risk of bodily harm to ignore a resident's propensity for violence against other residents.

52.     On October 22, 2018, Ruiz-Hernandez, told staff he was "going to do something because he was mad," threw his tray of food at a staff member, and threatened to attack a staff member. Ruiz-Hernandez had to be escorted out of the cafeteria by security back to the unit.

53.     On October 22, 2018, Barrientos lashed out following Ruiz-Hernandez's removal from the cafeteria. Barrientos threw his cup at a wall and upon returning to the unit, Barrientos threw a trash can at a nurse's aide.

54.     On October 22, 2018, Defendant Eastin, notated Ruiz- Hernandez and Barrientos acting suspicious on the unit, throwing gang signs, making pop noises that she believed sounded like a gun, and having secretive conversations. Defendant Eastin was concerned enough to bring it to the attention of Defendant Urban and request assistance in keeping an eye on them.

55.     Despite these documented violent and aggressive outbursts and suspicious activity, both Ruiz-Hernandez and Barrientos were allowed to freely roam the unit.

#27N7469

## THE ATTACK ON DALTON BLEDSOE

56.    On October 22, 2018, at or about 2:10 p.m., Dalton Bledsoe was lured away from the public areas of the unit into an unlocked bedroom where Ruiz-Hernandez brutally attacked him while Barrientos stood as a look out.

57.    According to an LSH Staff's member's review of the video surveillance from the time of the attack, Ruiz-Hernandez was able to lure Dalton Bledsoe to an unlocked patient room where he viciously attacked him for at least four minutes without LSH Staff noticing.

58.    No LSH employee was aware of the attack until Ruiz-Hernandez exited the room covered in blood, proudly proclaiming, "I killed him".

59.    Immediately following the attack on Dalton Bledsoe, Barrientos began attacking another patient. Ruiz-Hernandez joined in on the attack of the second patient. Barrientos and Ruiz-Hernandez congratulated each other for committing these attacks.

60.    When questioned, Ruiz-Hernandez said, "I have killed people before and I don't like child molesters." Ruiz-Hernandez and Barrientos both requested showers in order to "wash that child molester's blood off".

61.    Defendant Hernandez reported hearing screaming during the attack but failed to investigate where the screaming was coming from or the cause.

62.    Defendant Eastin reported hearing a "loud pitched scream" during the time of the attack but failed to investigate. Defendant Eastin later noted, "After everything was done and we were being briefed I realized the scream we all heard was Dalton, and Andres was whistling to cover up the screams."

#27N7469

63.     The scene of the attack was so horrendous that Defendant Eastin hysterically ran from the room where Plaintiff Dalton Bledsoe was found. The room where Dalton Bledsoe was found was covered in blood from floor to ceiling.

64.     Larned Emergency EMS were dispatched to LSH on the report of a barely conscious and severely bleeding patient. Larned Emergency EMS transported Dalton Bledsoe by ambulance to Pawnee County Community Hospital. Larned Emergency EMS reported that Dalton Bledsoe lost approximately 1.5 liters of blood.

65.     Dalton Bledsoe arrived at Pawnee County Community Hospital as a code red trauma in critical condition. Dalton Bledsoe had to be intubated and sedated prior to being transported via helicopter to Wesley Medical Center in Wichita, KS as a level 1 trauma.

66.     The attack on Dalton Bledsoe resulted in the following physical injuries:

(a) Traumatic Brain Injury;

(b) Subdural Hematoma with a Subarachnoid Hemorrhage;

(c) Bilateral Conjunctival Hemorrhages;

(d) Orbital Floor Fracture;

(e) Forehead laceration with scalp degloving; and

(f) His body in general was bruised, contused, stretched, strained, sprained, and otherwise made sore, and lame.

67.     As Dalton Bledsoe came out of sedation, it became apparent that he was suffering from the following neurological issues:

(a) Dalton was non-verbal, unable to answer even the simplest yes or no questions;

(b) Dalton was unable to feed himself or swallow, requiring the placement of a PEG tube for feedings; and

#27N7469

(c) Dalton was incontinent;

68. After over two weeks in the hospital at Wesley Medical Center, it was determined that Dalton would need placement at a TBI Rehab center in order to assist with decreased neurological functions. On November 6, 2018, Dalton Bledsoe was transferred to Texas Neurorehab Center.

69. Upon arrival at the Texas Neurorehab Center, Dalton was diagnosed with a severe TBI and dysphagia requiring continued PEG placement. It was notated that upon arrival Dalton was only able to answer simple yes/no questions non-verbally, only able to utter 1-2 words, remained incontinent, and unable to walk.

70. Plaintiff Dalton Bledsoe was discharged from Texas Neurorehab Center on January 17, 2019, 87 days after the attack that took place at LSH. Upon discharge, Dalton still had physical limitations and moderate to severe cognitive and linguistic deficiencies as a result of the traumatic brain injury he suffered from the attack.

71. The actions and omissions of defendants caused or contributed to cause Plaintiff Dalton Bledsoe to suffer damages.

## IV.   CLAIMS FOR RELIEF

**COUNT 1 – VIOLATION OF BLEDSOE'S 14TH AMENDMENT RIGHT TO REASONABLY SAFE CONDITIONS OF CONFINEMENT**

**(AGAINST DEFENDANTS KDADS, KECK, JOHN DOE, AND JANE DOE)**

72. Plaintiff Bledsoe hereby incorporates the allegations contained in paragraphs 1 through 71, as though fully set forth herein.

73. Plaintiff Bledsoe's constitutional right to reasonably safe conditions of confinement was clearly established and known at the time of his placement at Larned State Hospital.

#27N7469

74.     Defendants Keck, John Doe, and Jane Doe are liable under 42 U.S.C. §1983, either by means of deliberate indifference to known dangers of which they were apprised with respect to their placement of Bledsoe, or by abdication of their professional responsibility to make appropriate placements, and to supervise and monitor placements of Bledsoe.

75.     Defendants Keck, John Doe, and/or Jane Doe, acting under color of state law, caused Bledsoe to suffer physical and mental harm by placing him at a facility that they knew was severely understaffed and incapable of providing reasonably safe conditions.

76.     As a direct and proximate result of the violations Plaintiff Bledsoe's civil rights under 42 U.S.C. §1983 by the aforementioned KDADS employees, Bledsoe suffered both pecuniary and non-pecuniary damages associated with his injuries set out herein.

WHEREFORE, for the foregoing considerations, Plaintiff Dalton Bledsoe respectfully request that this Court enter judgment against Defendants KDADS, Keck, John Doe, and Jane Doe, jointly and severally, for all of the injuries and damages allowed by law, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), for costs, and for any such other relief as the Court may deem just and proper.

## COUNT 2 – VIOLATION OF BLEDSOE'S 14TH AMENDMENT RIGHT BY DELIBERATE INDIFFERENCE AND FAILURE TO PROTECT

### (AGAINST DEFENDANTS LSH, KECK, REINS, DIPMAN, KARP, URBAN. EASTIN, CLARK, AND HERNANDEZ)

77.     Plaintiff Bledsoe hereby incorporates the allegations contained in paragraphs 1 through 76, as though fully set forth herein.

78.     Plaintiff Dalton Bledsoe's constitutional right to reasonable protection from resident-on-resident violence was clearly established at the time residents Ruiz-Hernandez and Barrientos orchestrated the attack on Plaintiff on October 22, 2018.

16

#27N7469

79.     At all times material, Defendant LSH had in place policies, practices, customs, procedures, rules, and regulations which caused, allowed, and permitted residents with known violent propensities, such as Ruiz-Hernandez and Barrientos, to be integrated with and have access to other residents of the facility, thereby subjecting other residents of the facility, such as Dalton Bledsoe, to be victims of Ruiz-Hernandez and Barrientos' violent and aggressive behavior. As the direct and proximate result of, and as the reasonably foreseeable consequence of, these policies, practices, customs, procedures, rules and regulations, Dalton Bledsoe was violently attacked by Ruiz-Hernandez and suffered and sustained injuries and damages.

80.     While Defendant LSH, Reins, and Dipman, knew Plaintiff's constitutional right to reasonable protection from resident-on-resident violence was clearly established, it failed to take steps to segregate Ruiz-Hernandez and Barrientos from other residents or to establish security procedures to protect other residents from their dangerous and aggressive behavior. Accordingly, Defendants LSH, Reins, and Dipman knew that they were violating Dalton Bledsoe's clearly established constitutional rights. As the direct and proximate result of, and as the reasonably foreseeable consequence of, subjecting other residents of the facility, such as Dalton Bledsoe, to be victims of Ruiz-Hernandez and Barrientos' violent aggressive behavior, Dalton Bledsoe was violently attacked by Ruiz-Hernandez and suffered and sustained injuries and damages.

81.     At all times material, Defendants Keck, Rein, and Dipman promulgated and enforced policies, practices, customs, procedures, rules, and regulations which caused, allowed, and permitted residents with known violent propensities, such as Ruiz-Hernandez and Barrientos, to be integrated with and have access to other residents of the facility, thereby subjecting other residents of the facility, such as Dalton Bledsoe, to be victims of Ruiz-Hernandez and Barrientos' violent and aggressive behavior. As the direct and proximate result of, and as the reasonably

#27N7469

foreseeable consequence of, Defendants Keck, Rein, and Dipman's promulgation and enforcement of these policies, practices, customs, procedures, rules and regulations, Dalton Bledsoe was violently attacked by Ruiz-Hernandez and suffered and sustained injuries and damages.

82.     At all times material, Defendants Keck, Rein, and Dipman promulgated and enforced policies, practices, customs, procedures, rules, and regulations which caused, allowed, and required employees to work 16-hour shifts due to a 22% vacancy rate among MHDD staff, thereby leaving units understaffed or staffed by employees suffering from exhaustion. As the direct and proximate result of, and as the reasonably foreseeable consequence of, Defendants Keck, Rein, and Dipman's promulgation and enforcement of these policies, practices, customs, procedures, rules and regulations, Ruiz-Hernandez and Defendant Barrientos were able to coordinate and successfully carry out the attack on Dalton Bledsoe without any staff intervention leaving Plaintiff Dalton Bledsoe to suffer and sustain injuries and damages.

83.     At all times material, Defendant Karp knew Dalton Bledsoe's constitutional right to reasonable protection from resident-on-resident violence was clearly established, Defendant Karp failed to take steps to report the safety concerns to his LSH administration or to establish security procedures to protect Dalton Bledsoe from the threat posed from other residents upon disclosure of the nature of Dalton Bledsoe's charges. Accordingly, Defendant Karp knew that she was violating Dalton Bledsoe's clearly established constitutional rights. As the direct and proximate result of, and as the reasonably foreseeable consequence of, Defendant Karp's failure to establish security procedures to protect Dalton Bledsoe following disclosure of the nature of his charges, Dalton Bledsoe was violently attacked by Ruiz-Hernandez and suffered and sustained injuries and damages.

#27N7469

84.     While Defendants Urban, Eastin, Clark, and Hernandez knew Dalton Bledsoe's constitutional right to reasonable protection from resident-on-resident violence was clearly established, Defendants Urban, Eastin, Clark, and Hernandez failed to take steps to segregate Ruiz-Hernandez and Barrientos from other residents or to establish security procedures to protect other residents, including Dalton Bledsoe, from Ruiz-Hernandez and Barrientos' suspicious, dangerous, and aggressive behavior. Accordingly, Defendants Urban, Eastin, Clark, and Hernandez knew that they were violating Dalton Bledsoe's clearly established constitutional rights. As the direct and proximate result of, and as the reasonably foreseeable consequence of Defendants Urban, Eastin, Clark, and Hernandez subjecting other residents of the facility, such as Dalton Bledsoe, to be victims of Ruiz-Hernandez and Barrientos' suspicious, violent, and aggressive behavior, Dalton Bledsoe was violently attacked by Ruiz-Hernandez and suffered and sustained injuries and damages.

85.     As a direct and proximate result of Defendants' violating Dalton Bledsoe's civil rights under 42 U.S.C. §1983, Bledsoe suffered both pecuniary and non-pecuniary damages associated with his injuries set out herein.

WHEREFORE, for the foregoing considerations, Dalton Bledsoe respectfully requests that this Court enter judgment against Defendants KDADS, Keck, Reins, Dipman, Karp, Urban, Eastin, Clark, and Hernandez, jointly and severally, for all of the injuries and damages allowed by law, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), for costs, and for any such other relief as the Court may deem just and proper.

### COUNT 3 – CLAIMS UNDER THE KANSAS TORT CLAIMS ACT (KTCA)

### (Against KDADS, LSH, Keck, Howard, Reins, Dipman, Karp, Urban, Eastin, Clark, Hernandez, John Doe, and Jane Doe)

86. Plaintiff Bledsoe hereby incorporates the allegations contained in paragraphs 1 through 85, as though fully set forth herein.

87. KTCA 75-6103 (a) provides: "Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

88. Defendants KDADS, LSH, Keck, Howard, Reins, Dipman, Karp, Urban, Eastin, Clark, Hernandez, John Doe, and Jane Doe, owed a duty of reasonable care to those in their custody, including duty to take reasonable steps to protect patients from unreasonable risk of harm, including resident-on-resident violence.

89. Defendants KDADS, LSH, Keck, Howard, Reins, Dipman, Karp, Urban, Eastin, Clark, Hernandez, John Doe, and Jane Doe, breached said duty by:

      (a) Failing to provide safe conditions of confinement;

      (b) Failing to maintain adequate staffing levels for personnel; and

      (c) Failing to adequately train, supervise, and control personnel.

90. Defendants Karp, Urban, Eastin, Clark, Hernandez, had actual or constructive knowledge of Ruiz-Hernandez and Barrientos suspicious, violent, and aggressive behavior to trigger a duty to take reasonable steps to protect other residents from Ruiz-Hernandez and Barrientos.

91. Defendants Urban, Eastin, Clark, and Hernandez were directly responsible for Dalton Bledsoe and were negligent in guarding, supervising, and observing him and/or Ruiz-Hernandez and Barrientos before the attack and failed to take reasonable steps to prevent the attack.

#27N7469

92.     Defendants Keck, Howard, Reins, and Dipman in their supervisory roles are responsible for the actions of their subordinates, including past and present employees.

93.     Defendants Keck, Howard, Reins, and Dipman in their supervisory roles were negligent in staffing, training, monitoring, and supervising their employees.

94.     Defendants LSH & KDADS are vicariously responsible for the negligence of other defendants.

95.     In Kansas, custodian of a person has special duty to protect that person. Defendants KDADS, LSH, Keck, Howard, Reins, Dipman, Karp, Urban, Eastin, Clark, Hernandez, John Doe, and Jane Doe failed to protect Dalton Bledsoe. Defendants' failure to protect Dalton Bledsoe proximately and actually caused or contributed to cause damages and injuries.

96.     But for the negligence and carelessness of Defendants KDADS, LSH, Keck, Howard, Reins, Dipman, Karp, Urban, Eastin, Clark, Hernandez, John Doe, and Jane Doe, Dalton Bledsoe would not have been attacked by resident Ruiz-Hernandez.

97.     The actions and omissions of Defendants KDADS, LSH, Keck, Howard, Reins, Dipman, Karp, Urban, Eastin, Clark, Hernandez, John Doe, and Jane Doe, proximately and actually caused or contributed to cause the damages and injuries.

WHEREFORE, for the foregoing considerations, Plaintiff Dalton Bledsoe respectfully request that this Court enter judgment against Defendants KDADS, LSH, Keck, Howard, Reins, Dipman, Karp, Urban, Eastin, Clark, and Hernandez, jointly and severally, for all the injuries and damages allowed by law, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), for costs, and for any such other relief as the Court may deem just and proper.

#27N7469

Dated this 22nd day of October, 2020.

Respectfully submitted,

KLENDA AUSTERMAN LLC

  /s/ Lauren N. Wright
Lauren N. Wright, #27616
Christopher A. McElgunn, #13359
Michelle L. Brenwald, #19287
1600 Epic Center - 301 North Main
Wichita, Kansas  67202-4816
TEL:   (316) 267-0331
FAX:   (316) 267-0333
lwright@klendalaw.com
cmcelgunn@klendalaw.com
mbrenwald@klendalaw.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury trial of all issues so triable, pursuant to Fed. R. Civ. P. 38.

  /s/ Lauren N. Wright
Lauren N. Wright, #27616

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs designate Wichita, Kansas as the place of trial for all claims arising in this action.

  /s/ Lauren N. Wright
Lauren N. Wright, #27616

22

#27N7469